MILLS et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 10, 1902.)

No. 43.

CUSTOMS DUTIES—FIGURED COTTON CLOTH.

Tariff Act 1897, par. 313, imposing an additional duty on "cotton cloth in which other than the ordinary warp and filling threads have been introduced in the process of weaving to form a figure," includes cotton cloth in which there is a separate and extra thread, not introduced for the purpose of ordinary manufacture, but with the sole object of forming the figure, and which does not in any way enter into the structural part of the goods, but is for ornamental purposes, and without which the fabric would have been a completed fabric.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Appeal from a decision of the United States circuit court for the Southern district of New York (109 Fed. 564), affirming a decision of the board of United States general appraisers, which sustained the action of the collector and overruled the protests of the appellants.

W. Wickham Smith, for appellants.

Chas. D. Baker, for the United States.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. In May, 1890, the appellants, Mills & Gibb, imported into the United States at the city of New York a case of cotton woven goods of 25 different varieties, each containing figures of various kinds produced in weaving, and known as "fancy cottons." They were all assessed for duty as cotton cloth, under paragraphs 307 and 308, Schedule I, of the tariff act of July 24, 1897, and known as the "countable clauses." Upon 17 fabrics an additional duty was assessed under paragraph 313 of the same act, which is as follows:

"313. Cotton cloths in which other than the ordinary warp and filling threads have been introduced in the process of weaving to form a figure, whether known as lappets or otherwise, and whether unbleached, bleached, dyed, colored, stained, painted or printed, shall pay in addition to the duty herein provided for other cotton cloth of the same description or condition, weight and count of threads to the square inch, one cent per square yard if valued at not more than seven cents per square yard; and two cents per square yard if valued at more than seven cents per square yard."

The importers protested against the exaction of this additional duty, but the protests were overruled by the board of general appraisers as to every fabric except one. The circuit court affirmed the decision of the board.

The substantial question in the case was whether, in these fabrics of cotton cloth, other than the ordinary warp and filling threads had been introduced in the process of weaving to produce a figure, and upon this question the witnesses for the importers and for the government differed. It was agreed that the figure effects in the goods in question were produced by attachments to the loom, such as Jacquard attachments, dobby attachments, drop boxes, or lino attachments; but the witnesses for the government conceded that this fact did not afford

114 F.—17

a sufficient test for the purpose of determining the disputed question in regard to the use of ordinary warp and filling threads. For example, Mr. Henry F. Lippett, a witness of large manufacturing experience, testified as follows:

"Q. For what purpose are they [the Jacquard head or the dobby head] attached to and worked in conjunction with the loom proper? A. They are used for the purpose of making some of the very wide range of goods that is called 'fancy goods.' Q. And does that usually employ a separate and an independent thread in forming the fabrics? A. They may or may not. There are a great many dobby goods and a great many Jacquard goods in which the figure is produced by the ordinary threads of the fabric."

For some years before 1897 the importers and the appraising officers had differed in regard to the proper rate of duty to be imposed upon embroidered cotton fabrics, but it does not seem certain that paragraph 313 was inserted in the act of 1897 for the purpose of attempting to settle this question. There is reason to think that the introduction was due to a desire on the part of the domestic manufacturers that "lappet weaves," a new product, and produced by new and special machines in this country,—"a figure weave of the kind when the plain cloth has a woven pattern or design in its surface or embroidery,"— should be subject to additional specific duties. The lappet method of weaving is described as follows:

"It is a motion by which a thread is lapped onto the ordinary warp and filling of a piece of cotton goods. It consists of a number of needles, which by the proper mechanism it is possible to either. raise or depress, and also to move either to the right or to the left. In that way the thread that these needles control can be put under or over the filling threads, or by moving to the right or to the left can be put under or over, as the case may be, the warp threads. In the ordinary Jacquard only one of these motions is possible."

It is probably true that a filling thread which can be used for the ordinary purpose of filling is sometimes used and introduced in the process of weaving by the skill of manufacturer for the sole purpose of forming a figure, and so has become an extraordinary thread; and this fact constitutes a part of the difficulty in defining with exactness the term which is used for the first time in paragraph 313. Our opinion is that the paragraph intends to describe and include cotton cloth in which there is a separate and an extra thread; that is, a thread not introduced for the purpose of the ordinary manufacture of plain cloth, but introduced in or during the process of weaving for the sole purpose of forming the figures, and which does not in any way enter into the structural part of the goods, but is for ornamental purposes, and without which the fabric would have been a completed fabric.

It follows that all the goods which are the subject of this appeal were properly dutiable under paragraph 313. The decision of the circuit court is affirmed.